68 So.2d 854

**PEOPLES TEL. CO. v. BUCHANON.**

**7 Div. 213.**

Court of Appeals of Alabama.

Dec. 1, 1953.

372

Hugh Reed, Centre, for appellant.

Keener & Keener, Centre, for appellee.

HARWOOD, Judge.

This cause was tried by the court below without the intervention of a jury. Upon completion of the hearing the court entered a judgment in favor of the plaintiff, and assessed his damages at $150. Defendant's motion for a new trial being overruled appeal was perfected to this court.

At the opening of the trial the court announced that the case would be tried on counts 4, 5, 6, and 7 of the complaint. During the course of the trial the court announced that count 7 would go out.

◼ Demurrers were filed to these counts, but no rulings were made thereon by the court, nor was any judgment entered relative to the demurrers. In this condition nothing is presented in so far as the technical sufficiency of the counts is concerned. McPeters v. White, 31 Ala.App. 89, 12 So.2d 568; National Life and Accident Ins. Co. v. Hannon, 22 Ala.App. 483, 118 So. 170.

Appellant's assignments of error 1, 2, and 3 respectively assert as error the action of the court in overruling respective demurrers to counts 4, 5, and 6. In view of what has been said above these assignments are without merit.

Counsel for appellant further insist that counts 4, 5, and 6 respectively, fail to state a cause of action, as distinguished from defectively pleading one, and therefore cannot sustain a judgment. See John E. Ballenger Const. Co. v. Joe F. Walters Const. Co., 236 Ala. 548, 184 So. 275.

◼ This point is sufficiently before us by assignment of error 5 which asserts as error the action of the lower court in overruling appellant's motion for a new trial, one of the grounds of said motion being that the judgment was contrary to the law.

Count six of the complaint avers that "heretofore and on to wit; January 6, 1950 the defendant operated a telephone exchange in and near the Town of Centre, Alabama, and in connection with this business maintained telephone wires along the Alabama State Highway leading from Centre, Alabama, to Leesburg, Alabama, said wires being strung on poles, and the plaintiff further avers that *as* said time the defendant so negligently maintained a pole and the wires suspended thereon at a point, to wit; about two miles west of the Town of Centre, Alabama, and East of and at or near the home of Van Davis, that said pole and wires were negligently permitted to fall into and remain in said Alabama State Highway at a point, to wit; two miles west of the town of Centre, Alabama, and East of and at or near the home of Van Davis, and that at said time and place the plaintiff's 1938 Ford automobile collided with the said pole or wires lying in said Alabama State Highway, and as a proximate result and consequence thereof the plaintiff's car was damaged and demolished, hence this suit."

Admittedly the count is ineptly drawn. However, it is provided by Section 570, Title 7, Code of Alabama 1940, that:

"No judgment can be arrested, annulled, or set aside, for any matter not

previously objected to, if the complaint contain a substantial cause of action."

■ The strict rule indulged against a pleading on demurrer is inapplicable when the sufficiency of a complaint is attacked upon the judgment, and when attacked, all doubts and intendments should be resolved in favor of the sufficiency of the complaint. Werten v. K. B. Koosa and Co., 169 Ala. 258, 53 So. 98; City of Anniston v. Greene, 26 Ala.App. 513, 162 So. 570.

■ In light of the above principles it is our conclusion that count six was sufficient as against the method of attack sought to be employed against it on this appeal. The defects in it were such as might readily have been amended had the court's ruling on appropriate demurrer been obtained. City of Anniston v. Greene, supra, and cases therein cited.

In the trial below the plaintiff testified that about 8 o'clock on a night in January 1950 he was driving towards Centre, and at a point two miles from Centre, and as he rounded a curve he saw a telephone pole and wires across the road. At the time he was driving at a speed of about 35 miles per hour and although he "went for" the brakes he was unable to stop his car before hitting the pole as he was right at it when he first saw it.

The night was foggy, but the plaintiff did not observe any wind.

The plaintiff further testified that he examined the pole after the accident and "the inside of the pole was rotten, a little shell around the edge outside, and all the inside was rotten, and the part of the pole that had been in the ground was 'swunk,' and it had just pulled out of the ground." He had observed this pole before the accident and it had another little pole braced against it attached by about three twenty-penny nails and a piece of wire. After the accident the little pole had fallen loose from the larger one. He did not know how long the pole had been across the road before he hit it.

The plaintiff's son, who was in the car at the time of the accident, gave testimony largely corroborative of the plaintiff's.

Lathan O'Briant testified that he arrived at the scene a few moments after the accident.

He had noticed the pole prior to the accident. It stood about 15 feet, with a prop set against it and attached by two or three strands of telephone wire wrapped around the two poles.

After the accident the telephone pole was broken and splintered. The bottom of the pole was about 10 inches in diameter and had rotted down to a diameter of 6 or 7 inches.

This witness further testified that he would say a pretty good gale of wind was blowing on this night.

For the defense Mr. L. F. Gilliland testified that he had been employed by the defendant for the past 15 to 18 years. He did "construction, maintenance, installing, and whatever there is to do."

He is familiar with the proper method of constructing telephone lines, and the defendant company tries to follow standard procedures of construction.

During the past 18 years he has inspected the company's lines at the point of the accident; the summer before the accident an extra cross arm had been put on all the poles on this circuit, and each pole had been inspected by driving a bar into it below ground to see if it was rotten underneath, and also by striking the pole with a hammer to see if it was hollow; several poles were replaced at this time; at this time he had inspected the pole that plaintiff ran into and it was sound; it was a chestnut pole 14 to 16 inches in diameter and was braced by a push pole fastened by big nails and wrapped wire. This is standard construction; the line being on an angle at this point it was his judgment that this brace made the pole reasonably safe in view of the angle and stress and strain of the wires.

This witness further testified that when he was notified of the accident he came immediately to the scene and arrived within 15 or 20 minutes of the accident, and went to work to clear up the circuits.

This witness further testified that it was a rough night with a heavy wind blowing.

On cross-examination Mr. Gilliland testified that it was his judgment that he had worked the section of line in question in November or December before the accident in January; that he did not know how long the pole in question had been in the ground, but he had placed the push pole brace against it some five or six years prior to the accident.

Jackie Weaver, another employee of the appellant, testified that he was familiar with the standard specifications for construction of telephone lines, and that the appellant's line was constructed according to such specifications; that in reworking the line some two months prior to the accident over one-half of the poles had been replaced, and extra guy wire added where needed; that the line at the point of the accident was in good condition and he had inspected the poles for soundness, and had inspected the particular pole in question.

On cross-examination Weaver testified that he saw the pole shortly after the accident and it had not decayed under ground to any unreasonable extent, that is not enough to hurt.

The above does not represent all of the evidence introduced by each side, but serves to fairly represent the tendencies of the evidence material to this review produced by each party, and illustrates their respective theories.

At the conclusion of the appellee's case the appellant moved to exclude all of the plaintiff's evidence. This motion was denied.

This action by the trial court is made the basis of appellant's assignment of error number 4.

As stated by Lawson, J., in Hollins v. Nalls, 257 Ala. 175, 58 So.2d 112, 114, supported by numerous authorities: "The rule in respect to a motion by the defendant to exclude all of plaintiff's evidence is that the trial court will not be put in error for refusing the motion, nor will it be put in error for granting it if the evidence does not make a prima facie case."

No error can therefore be predicated on assignment of error number 4.

The appellant's assignment of error number 5 is that the lower court erred in overruling its motion for a new trial. The grounds of the motion thus indirectly became assignments of error.

The appellant's counsel in his brief has argued only grounds 1, 2, 3, 4, 5, 6, 9, 11, 13 and 14. Our review will of course be confined to such grounds.

Ground 1 is that the judgment was contrary to the law. To the extent permissible under an assignment of such a general nature we have already considered the point, supra. The ground failing to specify the particulars, and the complaint sufficiently stating a cause of action, no further review is invited by this ground. See Ewart Lumber Co. v. American Cement Plaster Co., 9 Ala.App. 152, 62 So. 560.

Ground 2 asserts that the judgment was contrary to the facts.

Considering the evidence before the court and indulging the presumption of correctness of the findings of the trial court, which we must do, we find no basis for a conclusion that the judgment was palpably wrong. Reversal should not therefore be possible on this ground.

Ground 4 asserts that the court erred in refusing appellant's motion to exclude appellee's evidence made at the close of appellee's case. This matter was the same as was made the basis of appellant's assignment of error 4, and is without merit as pointed out in discussion of that assignment.

Grounds 5 and 6 are argued jointly with ground 4, and this ground being without merit we pretermit consideration of grounds 5 and 6.

Ground 9 asserts that the court erred in rendering judgment for the appellee in that there was no legal evidence before the court that appellant's construction

and maintenance practices were either wrongful or negligent.

Counsel for appellant assert that: "This ground went to the action of the court in overruling appellant's objection to the expert opinion evidence of witness J. W. Patterson, and appellant's motion to exclude the same."

Neither of the above instances was made grounds of appellant's motion for a new trial, nor were they made the basis of any direct assignments of error. These points cannot now be brought to our review by the indirect method by which our attention is sought. The essential function of an assignment of error is precision and generality destroys its very purpose. See Ala.Dig., Appeal and Error, ☞718, 719, 724(2) for innumerable authorities.

Grounds 11, 13, and 14 all go to the sufficiency of the evidence to support the judgment. We pretermit for the time the sufficiency of the form of these assignments as it is our conclusion that under the developed evidence no merit attaches to them.

We have considered the points raised by the assignments, and have of course limited our review to the scope of the assignments. We find no basis of reversal in this aspect of our review.

Affirmed.